John DOE, Ph.D., and all others similarly situated, Plaintiffs–Appellants,

v.

LAWRENCE LIVERMORE NATIONAL LABORATORY, John Nuckolls, Director, and the Regents of the University of California, Defendants–Appellees.

No. 93–16792.

United States Court of Appeals, Ninth Circuit.

Decided Dec. 15, 1997.

---

Richard Gayer, San Francisco, CA, for plaintiffs-appellants.

Douglas H. Barton, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, CA, for defendants-appellees.

Before: CHOY, CANBY and T. G. NELSON, Circuit Judges.

CHOY, Circuit Judge:

Plaintiff-Appellant Dr. John Doe ("Doe") appealed the district court's dismissal of two claims: the first a breach of contract claim against the University of California ("University"), as manager of the Lawrence Livermore National Laboratory ("Laboratory"); the second a 42 U.S.C. § 1983 claim against John Nuckolls ("Nuckolls"), in his official capacity as Director of the Laboratory.

We AFFIRM the district court's dismissal of the breach of contract claim against the University because it has Eleventh Amendment immunity as decided by the Supreme Court in *Regents of the Univ. of Calif. et al. v. Doe,* —— U.S. ——, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). But we REVERSE the dismissal of the § 1983 claim against Nuckolls in his official capacity because Doe's request for reinstatement constitutes prospective injunctive relief.

### Factual and Procedural Background *

Doe is a mathematical physicist with a Ph.D. from Harvard University. The Laboratory is operated by the University pursuant to a contract with the United States Department of Energy ("Department"). Under this contract, the University handles all employment matters for the Laboratory, while the Department controls security clearances for Laboratory employees. The contract also obligates the Department to pay the costs of any judgment rendered against the University in performance of its duties.

In June 1991, Doe allegedly accepted the Laboratory's written offer of employment. The offer required Doe to obtain a security clearance from the Department within a reasonable time period. But shortly after accepting the offer, Doe alleges that the Laboratory attempted to withdraw the offer, claiming that Doe could not obtain the required security clearance.

Beginning June 18, 1992, Doe filed various amended complaints stating several claims against different parties. For the purpose of Doe's appeal, only two causes of action in his second amended complaint-filed on April 7, 1993-are relevant. In addition to adding class action allegations, Doe's second amended complaint includes a breach of contract claim against the University. It also states a § 1983 claim against Nuckolls in his official capacity.

On May 10, 1993, Appellees moved to dismiss these claims, which dismissal the district court granted. In its order dated June 24, 1993, the district court held that the Eleventh Amendment barred the breach of contract claim against the University. The district court also dismissed the § 1983 claim against Nuckolls in his official capacity because the relief Doe sought-reinstatement or alternatively, reconsideration of employment-did not constitute prospective injunctive relief.[1]

In our opinion filed September 11, 1995, we reversed the district court's dismissal of the breach of contract claim. *See Doe v. Regents of the Univ. of Calif. et al.,* 65 F.3d 771 (9th Cir.1995). We held that the University, as manager for the Laboratory, was not entitled to Eleventh Amendment immunity since the Department of Energy, and not the State of California, would be ultimately liable for any judgment rendered against the University in performance of its contract with the Department. Because we found that the University was not an arm of the State in this instance, we concluded that Director Nuckolls had not acted as a "state official," but a "person" fully liable under § 1983. Thus, in our original disposition of this case, we found no need to address whether Doe's § 1983 claim against Nuckolls sought prospective injunctive relief.

However, on February 19, 1997, the Supreme Court of the United States reversed, clarifying the University's Eleventh Amendment immunity despite its indemnification contract. *See Regents,* —— U.S. at ——–––––, 117 S.Ct. at 904–05. After requesting on April 7, 1997, that the parties submit supplemental briefs limited to the § 1983 issue, we now reconsider the case on remand.

### Standard of Review

■ Immunity under the Eleventh Amendment is a question of law, which an appellate court reviews *de novo. BV Engineering v. Univ. of Calif., Los Angeles,* 858 F.2d 1394, 1395 (9th Cir.1988).

### Analysis

I. Breach of Contract Claim Against the University

■ The Supreme Court has clarified that it is an entity's potential legal liability, rather than its ability to require third party

---

* The facts of this case have been fully developed in an earlier opinion. *See Doe v. Regents of the Univ. of Calif. et al.,* 65 F.3d 771 (9th Cir.1995). Thus we review them only briefly here, instead focusing on the procedural history of this case following our original disposition.

1. Although undisputed by Appellees, Doe argues that the relief sought for the *class members* in paragraphs 2 and 3 of his second amended complaint constitutes prospective injunctive relief. But the district court did not dismiss the § 1983 claim alleged by class members other than Doe. Thus, the validity of these allegations is not before this court on appeal.

indemnification, which is relevant to Eleventh Amendment immunity. *Regents,* —— U.S. at ——–——, 117 S.Ct. at 904–05. Because the element of State liability is the single most important factor in determining whether an entity is an arm of the state, *see Durning v. Citibank, N.A.,* 950 F.2d 1419, 1424 (9th Cir.1991), we conclude that the University is an arm of the State of California under the test of *ITSI TV Prods. v. Agricultural Ass'ns,* 3 F.3d 1289, 1292 (9th Cir.1993).

Therefore, pursuant to the Supreme Court's decision in this case, we affirm the district court's holding that the University is immune from suit in federal court by reason of the Eleventh Amendment.[2]

## II. Section 1983 Claim Against Nuckolls

### A. Relationship Between § 1983 and the Eleventh Amendment

■ Claims under § 1983 are limited by the scope of the Eleventh Amendment. In *Will v. Michigan Dep't of State Police,* the Supreme Court held that "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" under § 1983. *Will,* 491 U.S. 58, 70, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). Moreover, *Will* clarified that a suit against a state official in his official capacity is no different from a suit against the State itself. *Id.* at 71, 109 S.Ct. at 2312. Therefore, state officials sued in their official capacities are not "persons" within the meaning of § 1983.

■ However, there is one exception to this general rule: When sued for *prospective injunctive relief,* a state official in his official capacity is considered a "person" for § 1983 purposes. *Id.* at 71 n. 10, 109 S.Ct. at 2312 n. 10. In what has become known as part of the *Ex parte Young* doctrine, *see Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity.

The viability of *Ex parte Young* as traditionally applied survives the Supreme Court's treatment of the issue in *Idaho v. Coeur d'Alene Tribe,* —— U.S. ——, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). There Justice Kennedy, joined in that part of his opinion only by Chief Justice Rehnquist, stated that he would not extend *Ex parte Young* to every case where prospective injunctive relief is sought, calling instead for a case-by-case balancing approach. *Id.* at ——–——, 117 S.Ct. at 2034–36. But the rest of the Court made it clear that *Ex parte Young* is available where "a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Id.* at ——, 117 S.Ct. at 2046. Therefore, we now apply this standard to Doe's case.

### B. Reinstatement Constitutes Prospective Injunctive Relief

■ Doe argues that he requests prospective injunctive relief. Specifically, he requests an injunction requiring Nuckolls to reinstate Doe as a physicist at the Laboratory. In the alternative, Doe requests an injunction requiring Nuckolls to reconsider Doe's employment application *without* reference to his eligibility for security clearance.

The district court held that Doe's requests did not constitute prospective injunctive relief because both forms of relief related "solely to an alleged past violation of federal law." *Doe v. Lawrence Livermore Nat'l Lab.,* 817 F.Supp. 77, 79 (N.D.Cal.1993). The district court cited *Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), and *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), as support for its decision.

Unfortunately, it is difficult to rely on these cases because they do not specifically address reinstatement in the employment context. For example, *Papasan* involved claims by school officials and schoolchildren in several Mississippi counties who were being unlawfully denied the economic benefits

---

**2.** This ruling constitutes a denial of Doe's motion for redetermination of the University's Eleventh Amendment immunity filed March 17, 1997. Also, Doe's petition for reconsideration *en banc*

of the status of the University under the Eleventh Amendment was *received* on April 7, 1997. But since it was never *filed,* we need not decide the petition at this time.

of public school lands granted by the United States to the State of Mississippi. According to the petitioners, the federal grants created a perpetual trust, with the State as trustee, for the benefit of public schools. As trustee, the State had an obligation to pay appropriate income indefinitely. Therefore, petitioners sought, among other things, an award of past income not received. By characterizing the continued withholding of accrued benefits as an ongoing "breach of a continuing obligation," petitioners argued that the relief sought after was a prospective injunctive remedy. *Papasan*, 478 U.S. at 280, 106 S.Ct. at 2941.

However, the Court in *Papasan* rejected petitioners' characterization. It likened the case to the situation in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman*, the Supreme Court held that the Eleventh Amendment did not bar an injunction requiring the state to comply with federal standards for processing welfare applications in the future; however, the Court refused to allow an injunction ordering the state to pay back all the funds which had been improperly withheld.

Relying on *Edelman*, the Court in *Papasan* held that there was "no substantive difference between a not-yet-extinguished liability for a past breach of trust and the continuing obligation to meet trust responsibilities asserted by petitioners." *Papasan*, 478 U.S. at 281, 106 S.Ct. at 2942. Since the suit amounted to liability for the past breach of trust, petitioners' trust claim was barred by the Eleventh Amendment.

But beyond the obvious factual differences, Doe's case is analytically distinct from *Papasan* and *Edelman*. Doe is not attempting to recover lost wages or other accrued benefits by arguing that their continued withholding is an ongoing violation. Doe simply seeks job reinstatement hereafter, without any compensation for alleged prior violations of his rights.

In addition to *Papasan*, the second case cited by the district court and relied upon by Appellees is *Green v. Mansour*. *Green* involved a § 1983 claim questioning the administration of benefits under the Aid to Families with Dependent Children program

(AFDC). In the case, the Court found "no continuing violation of federal law to enjoin." *Green*, 474 U.S. at 71, 106 S.Ct. at 427. It also held that the Eleventh Amendment barred "a declaratory judgment that the respondent had violated federal law in the past." *Id.* at 74, 106 S.Ct. at 429.

However, *Green* was complicated by the fact that Congress had amended the AFDC statute while the case was pending, thereby rendering the claims for prospective relief moot. Doe's case has not been rendered moot by a statutory amendment.

In short, both *Papasan* and *Green* are very clear with respect to the proposition that the Eleventh Amendment allows only prospective injunctive relief to prevent an ongoing violation of federal law. However, neither case explicitly addresses whether a request for job reinstatement constitutes such relief.

On the other hand, this court has found in a prior employment case that reinstatement constitutes prospective injunctive relief. In *Cerrato v. San Francisco Community College District*, an applicant was denied a position as dean of instruction and brought a civil rights action against school officials. After recognizing the limits of the Eleventh Amendment, the court agreed to "hear Cerrato's section 1983 claim to the extent that he asks for prospective injunctive relief from the other defendants in their official capacities (e.g., the enjoining of the SFCC affirmative action plan, *the prospective hiring of Cerrato*, etc.)." *Cerrato*, 26 F.3d 968, 973 (9th Cir. 1994) (emphasis added).

In response, Nuckolls argues that *Cerrato* offers little guidance because it provides no facts beyond the parenthetical to explain the specific relief sought. But looking to other jurisdictions for guidance confirms the conclusions reached in *Cerrato*. For example, in *Lassiter v. Alabama A & M University*, a former university vice-president brought suit alleging § 1983 and state law breach of contract claims arising out of his termination. The Eleventh Circuit held that the Eleventh Amendment barred the plaintiff's request for a retroactive damages award. Nonetheless, the court allowed the plaintiff to seek rein-

statement because it constituted prospective relief. *Lassiter,* 3 F.3d 1482, 1485 (11th Cir.1993), *vacated on other grounds by Lassiter,* 28 F.3d 1146, 1152 n. 9 (11th Cir.1994).

Indeed other circuits have held overwhelmingly that job reinstatement constitutes prospective injunctive relief. *See Williams v. Commonwealth of Kentucky,* 24 F.3d 1526, 1542 (6th Cir.1994) (allowing prospective injunctive relief requested in plaintiff's § 1983 action, "namely, reinstatement"); *Russell v. Dunston,* 896 F.2d 664, 667–68 (2d Cir.1990) (holding that reinstatement is the sort of prospective relief that is not barred by the Eleventh Amendment); *Melo v. Hafer,* 912 F.2d 628, 635–36 (3d Cir.1990) (holding that the district court erred insofar as it dismissed the plaintiffs' claim for reinstatement); and *Elliott v. Hinds,* 786 F.2d 298, 302 (7th Cir.1986) (holding that reinstatement in a wrongful termination case falls outside the prohibitions of the Eleventh Amendment).

In particular, we find the explanation in *Elliott* compelling:

"The goal of reinstatement ... is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements. Elliott's alleged wrongful discharge is a continuing violation; as long as the state official keeps him out of his allegedly tenured position the official acts in what is claimed to be derogation of Elliott's constitutional rights."

*Elliott,* 786 F.2d at 302.

Similarly, Doe's reinstatement would not serve as compensation for any past harm, unlike a damages award. Reinstatement would not compensate Doe for lost wages or lost time working as a physicist with the Laboratory. Rather, reinstatement would simply prevent the prospective violation of Doe's rights which would result from denying him employment in the future. If Doe were reinstated, any salary received by him thereafter would have nothing to do with the alleged past violation. Doe would be entitled to such salary solely for his work after rein-statement. Thus, while reinstatement would relate to the past violation, it would not amount to relief *solely for the past violation.*

Moreover, despite numerous attempts to rationalize why Doe's request for reinstatement is rooted in the past, Nuckolls does not offer any employment case which specifically rejects the prospective nature of reinstatement. For example, in addition to *Papasan* and *Green* already discussed above, Nuckolls relies heavily on *Han v. United States Dep't of Justice* in arguing that reinstatement cannot be prospective since there is no ongoing policy and hence no threat of future enforcement against Doe.

*Han* involved breach of trust and other claims over the leasing of Hawaiian lands. In that case, plaintiffs argued that their rights were violated when state officials approved third party agreements, and thus requested that "state defendants be enjoined 'from taking any actions inconsistent with their duties.'" *Han,* 45 F.3d 333, 338 (9th Cir.1995). However, the court found the claims barred by the Eleventh Amendment. "There is no allegation that the state defendants are likely to approve third party agreements in the future or that plaintiffs otherwise face a threat of harm from the state defendants' future actions." *Id.*

In the first place, *Han* has nothing to do with employment reinstatement. More importantly, Doe's case differs because he has alleged an ongoing policy and the likelihood of future enforcement. Specifically, Doe submitted to the district court a letter by Nuckolls which adopted the recommendation of Laboratory employee Robert Perko. In his memorandum, Perko suggested basing employment suitability judgments, in part, on the time needed for a candidate to receive security clearance. This submission was acknowledged by the district court, 817 F.Supp. at 79 n. 7, and illustrates an ongoing policy and threat of future enforcement.[3]

In all, the cases offered by Nuckolls and relied upon by the district court are ill-suited as precedent for this employment case.

---

3. Contrary to Nuckolls'assertions, we find it insignificant that Doe does not have a currently pending application for a position with the Laboratory. Doe's desire to seek future employment may be inferred from his request for reinstatement.

Doe's case is not like the situation in *Edelman* where the plaintiff is attempting to cloak a request for past benefits, the continued withholding of which is argued to be an ongoing violation requiring future relief. Rather, reinstatement is a legitimate request for prospective injunctive relief.

Therefore, we reverse the district court's dismissal of Doe's § 1983 claim against Nuckolls in his official capacity. We remand this case for consideration of the merits of Doe's claims, including his request for reinstatement or alternatively, reconsideration of employment without reference to his eligibility for security clearance.

Doe's request for attorney's fees is denied.

No costs allowed.

AFFIRMED-IN-PART and REVERSED–IN–PART.